MARY A. CULL, as Administratrix, etc., of HENRY CULL, Deceased, Respondent, *v.* UNION RAILWAY COMPANY OF NEW YORK CITY, Appellant.

First Department, July 2, 1920.

Street railways — negligence — death caused by fall from street car — evidence not justifying recovery — failure to show cause of death.

In an action to recover for the death of a passenger, who was thrown from or fell from the defendant's street car near the terminus of the line, the liability of the defendant was predicated upon the theory that the car was operated on a cross-over switch at an excessive rate of speed, and that the rails above the seats of the car designed to prevent passengers from boarding the same on the wrong side were inadequate and insufficient. Evidence examined, and *held*, that the complaint should have been dis-

missed not only for the failure to establish the negligence of the defendant, but also because the plaintiff failed to prove that the death of the passenger was caused by the accident rather than by the results of alcoholic poisoning.

APPEAL by the defendant, Union Railway Company of New York City, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 17th day of May 1919, upon the verdict of a jury for $4,500, and also from an order entered in said clerk's office on the 19th day of May, 1919, denying the defendant's motion for a new trial made upon the minutes.

*Alfred T. Davison* of counsel [*James M. O'Neill* and *Alexander R. Jones* with him on the brief], *Alfred T. Davison*, attorney, for the appellant.

*Fred P. Harrington* of counsel [*Thomas H. Low* with him on the brief], *Frank L. Tyson*, attorney, for the respondent.

GREENBAUM, J.:

On the 27th day of April, 1918, plaintiff's intestate was a passenger on a south-bound open car of the defendant which was being operated in the borough of The Bronx, New York city, upon a line, the southerly terminus of which was One Hundred and Thirty-eighth street and Third avenue. When the car reached this terminus the conductor called out, " 138th Street — last stop." All of the passengers then got off the car excepting plaintiff's intestate, who stated that he wished to go down to One Hundred and Thirty-seventh street and that the conductor " left him ride." During the trip the conductor remonstrated with plaintiff's intestate for " talking so loud." After crossing One Hundred and Thirty-eighth street and just beyond the south curb the motorman stopped the car, got off and turned the switch leading from Third avenue into Lincoln avenue, and then got back on the car and operated it over the switch into Lincoln avenue, proceeding south on that avenue on the south-bound track towards One Hundred and Thirty-seventh street preparatory to a return northerly trip. Somewhere between One Hundred and Thirty-eighth and One Hundred and Thirty-seventh streets plaintiff's intestate fell from the car to the ground. The accident

occurred between two switches, one just south of One Hundred and Thirty-eighth street and the other just north of One Hundred and Thirty-seventh street.

The important question upon this appeal is whether the verdict for plaintiff was based upon sufficient evidence to establish negligence on the part of defendant. The negligence specified in the complaint and bill of particulars was that the defendant's trolley car "was operated at an excessive rate of speed for the conditions then and there existing and in that the rails (*sic*) along the left or easterly side of the car were removed from their customary position, and an open and unprotected space was left between the left side of the car and the street, and in that the said trolley car was so operated as to take a cross-over or switch at an excessive rate of speed, and in that the car was so constructed that it could not safely take the switch or cross-over at the speed under which it was operated."

The bill of particulars further states that the "rails, tracks and devices thereto were improper, inadequate and insufficient, as set forth in the complaint, and in that the switches and cross-overs therein were such as to cause the cars taking them to jerk and swerve."

The "rails along the left or easterly side of the car" mentioned in the bill of particulars had reference to the wooden railing extending along the length of the car above the seats commonly used in open cars, in order that the passengers may be restricted to boarding the car on one side only.

The only testimony that could by any stretch of imagination be construed as tending to show that the plaintiff's intestate was thrown from the car by reason of the alleged fact that the trolley car took a switch at an excessive rate of speed, is that of plaintiff's witness, Newman, that the trolley car "was just turning in by the switch there, * * * when the man fell out." The same witness, however, also testified most explicitly on cross-examination that the man fell out "right opposite the lunch wagon, * * * between the two switches." Plaintiff's exhibit showed that this point is directly between the switches. The practically undisputed evidence is, as adduced from both plaintiff's and defendant's

witnesses, that the accident occurred in the middle of the block between the switches at a point about opposite the lunch wagon.

The case is devoid of any evidence which would indicate that, even if the handrail were up, this would constitute negligence on the part of the defendant. Indeed, it has been judicially declared that the purpose of such a rail is to prevent persons from boarding or leaving the car on that side, and not to prevent passengers from falling out. (*Whitaker* v. *Staten Island M. R. R. Co.*, 65 App. Div. 451, 452.)

There is no material conflict in the testimony as to the speed at which the car was moving at the time the accident happened. The only witness for the plaintiff who testified as to this stated that the car was moving at its " usual speed " and " not too fast," while the witness for the defendant testified that it was " going slow."

Likewise there is no conflict in the testimony that the track was straight or almost straight and level at the point where the accident happened. The witness Newman stated: " It is almost straight, but a kind of curve, * * * a little, very small curve."

Evidence offered for the purpose of showing that the intestate's death was caused by the fall is very hazy and vague. It appears from the testimony of plaintiff's own witness, Dr. Miller, that there was a marked alcoholic odor from plaintiff's intestate's breath when he was brought to the hospital immediately after the accident, and that the witness then diagnosed his condition as due to alcoholic poisoning. The testimony of the hospital physicians, who were the plaintiff's own witnesses and who attended plaintiff's intestate from the time he was brought to the hospital immediately after the accident on April 27, 1918, until he was discharged therefrom on June 16, 1918, indicates that plaintiff's intestate showed no signs whatever, either when he was first brought to the hospital or at any time thereafter, of suffering from any injury caused by a fall, but that he was suffering from alcoholic poisoning, chronic Bright's disease and uremia, which was probably of long standing and which were likely to produce death at any time.

While it is true that an X-ray picture of the patient's

skull made shortly before the patient's death did show a fracture of the skull, it was admitted by the radiographer who took the picture that it could not be told therefrom whether the fracture had been caused recently or several years before. Dr. Riegelman, who performed the autopsy on July 6, 1918, testified, however, that the fracture was comparatively recent, but there was no testimony that it was a competent producing cause of his death.

Under such circumstances, it was at least as probable that the death was caused by chronic Bright's disease and uremia as by the fall, and the case, therefore, falls within the rule as stated in *Searles* v. *Manhattan R. Co.* (101 N. Y. 661, 662) that " When the fact is that the damages claimed in an action were occasioned by one of two causes, for one of which the defendant is responsible and for the other of which it is not responsible, the plaintiff must fail if his evidence does not show that the damage was produced by the former cause. And he must fail also if it is just as probable that they were caused by the one as by the other, as the plaintiff is bound to make out his case by the preponderance of evidence. The jury must not be left to mere conjecture, and a bare possibility that the damage was caused in consequence of the negligence and unskillfulness of the defendant is not sufficient."

It was unsuccessfully attempted upon the trial to show that the car lurched after it took the switch. There was not the slightest evidence that the car was so constructed that it could not safely take the switch or cross-over at the speed at which it was operated, or that in going over the switches and cross-overs there was any jerking or swerving or jolting of the car. In any event, as was stated in the case of *Delaney* v. *Buffalo, R. & P. Ry. Co.* (109 Atl. Rep. [Penn.] 605), which was published on the editorial page of the *New York Law Journal* on June 12, 1920: " It is a matter of common knowledge that cars will lurch in rounding curves, and to recover for an injury to a passenger resulting therefrom it must appear that such lurch was caused by some negligent act or omission on part of defendant." There is no evidence whatever tending to show any negligent act on the part of the defendant in that respect. An analysis of the entire testimony reveals that there was an insufficiency of proof

of any negligence on the part of defendant. The complaint should have been dismissed.

The judgment and order must be reversed, with costs, and the complaint dismissed, with costs.

CLARKE, P. J., DOWLING, SMITH and PAGE, JJ., concur.

Judgment and order reversed, with costs, and complaint dismissed, with costs.